## THE STATE OF KANSAS v. I. N. McBeth.

CONVICTION, *Not Supported by the Evidence.* The testimony examined, and *held*, that the verdict, judgment and sentence of conviction are not supported by the evidence.

### Appeal from Finney District Court.

AT the February term, 1890, *McBeth* was convicted of malicious destruction of property. He appeals. The opinion states the facts.

*A. J. Hoskinson*, and *W. R. Hopkins*, for appellant:

The court below erred in refusing a peremptory instruction to find a verdict of not guilty after the evidence of the state was in. There is a total failure in the evidence to prove any offense, under § 107 of the crimes act. The offense attempted to be proved is malicious injury to the shop or building described, the property of A. N. Brooks & Co. The essential element to be proved, then, was that the doors of the building were injured. Where injury is made punishable, it must be such as impairs the usefulness of the article alleged to be injured. Whar. Am. Crim. Law, § 1074.

The evidence of the state not only fails to show the doors were broken, injured, or destroyed, but, to the contrary, shows that they were neither injured, broken, nor destroyed, but were in a perfect condition. There being a total failure to prove the doors were either injured, broken, or destroyed, the instruction should have been given, and a failure to give it was error. The evidence not only fails to show the property belongs to another, but that it belonged to defendant. The court on the trial of this cause, however, took the erroneous view of the law, holding that a tenant was the owner of the building within the meaning of the statute. When property is leased it none the less belongs to the landlord. The tenant has no such ownership as would enable him to recover for injury to the real estate. If a tenant maliciously injures a building while in his possession, he would be guilty of an offense under § 107 of the crimes act, because the building is the property of another. The only right the tenant has is the right to possession. *Pacific Rly. Co. v. Walker,* 12 Kas. 602; *Fitzpatrick v. Gebhart,* 7 id. 32, 42, 43. See also Tied. Real Est., §§ 692, 693; *The State v. Moore,* 61 Mo. 280; *The State v. Gurnee,* 14 Kas. 122.

The only authority considered by the court on the trial of this cause was the case of *Brumley v. The State,* 12 Tex. App. 612. This case is upon the statute of Texas, article 426. The code of criminal practice provides: "Where one person owns the property, and another person has possession, charge or control of the same, the ownership thereof may be charged in either."

We have no such statute in Kansas. There is no question as between the landlord and tenant as to who owned the property.

*John N. Ives,* attorney general, and *H. F. Mason,* county attorney, for The State:

But one serious question is presented by the record in this case — Can one be guilty of the offense defined in § 107 of the crimes act by injuring property of which he holds the

fee, while the right of immediate possession is in his tenant? The information in this case is purposely so drawn as to squarely present this question upon a motion to quash. The contention of appellant is, that for the purposes of this section (107 of the crimes act), the tenant in peaceable and lawful possession, rather than he who holds the fee, is the "owner" of the property; that in this instance and to this extent, for the time being, "the rights of the user are paramount to the rights of the owner."

In *Brumley v. The State*, 12 Tex. App. 609, it is held, under a similar statute, that it is a fatal variance, under an allegation that the fence injured was the property of one Erwin, to prove that Erwin was the owner of the fee, while the property was by him leased to one Wetsel, who was in actual possession. Defendant seeks to evade the force of this decision by alleging in his brief that it is controlled by a peculiar statute of Texas, which enacts that—

"Where one person owns the property, and another person has the possession, charge, or control of the same, the ownership thereof may be charged in either."

We deny that the doctrine of this enactment is peculiar to Texas. The section quoted is merely declaratory—the formulation of a principle universally recognized. 2 Bish. Crim. Proc., § 720, *et seq.*; Kelley, Crim. Law & Prac., § 599.

We fail to discover that the Brumley case depends upon this statute or this doctrine, or has any near or remote connection with either. In fact, the Brumley case expressly holds that the pleader has no choice in the matter, but must allege the ownership to be in the tenant, not in the holder of the fee. In *Hurlbut v. The State*, 12 Tex. App. 252, a similar doctrine is announced. See, also, *Carter v. The State*, 18 Tex. App. 573; 17 Am. & Eng. Encyc. of Law, p. 300, note 1. It is familiar law that the general owner of property may be prosecuted for larceny of his own chattels, where he steals them from the possession of a lawful bailee; and in such cases the stolen goods are properly charged as belonging to the special owner or bailee. 2 Bish. Crim. Law, § 790; 2

Bish. Crim. Proc., § 721, note 15; 12 Am. & Eng. Encyc. of Law, p. 801, note 4.

We think the Kansas statute broad enough to cover willful and malicious trespass by the general owner as to property in the lawful possession of a tenant. We do not believe that one who should, for example, throw a stone through the window of a dwelling-house could escape criminal liability under this statute by showing that he was the landlord of the occupant and the owner of the realty. It is the willful and malicious invasion of the rights of another that forms the essence of the offense, and the willfulness and malice are questions of fact.

In the case at bar, the jury having determined that the trespass was willful and malicious, we think the offense was complete.

Opinion by GREEN, C.: This was a prosecution against I. N. McBeth under § 107 of the crimes act. The defendant was charged with unlawfully and maliciously injuring the doors of a certain building, owned by the defendant and two other persons, while the same was occupied by tenants. The evidence upon the trial established the fact that Brooks & Co. leased from the defendant, W. M. Kinnison, and C. H. Clark, the building in question, by the month, for a meat shop, and had paid the rent until the 1st day of November, 1890. On the 25th day of October, Brooks & Co. moved most of their things out of the building and locked it up. The defendant offered to refund the rent from the time the building had been vacated to the expiration of the month, and asked to be permitted to take possession of the building, which was refused. He then forced open the back door, which had been fastened by a bolt upon the door and a socket which held the bolt on the casing of the door frame. The socket was secured by two screws, which came out and the door opened. He entered the building through the back door and opened the front doors, and put a tenant in possession of the build-

ing.   The socket was replaced upon the casing of the back
door frame on the same day.   There was no evidence to show
that there was any other injury done to the doors or building.
The defendent was tried and convicted, and sentenced to pay
a fine of $10 and costs, and ordered to be committed to jail
until the fine and costs were paid.

The language of the crimes act, under which the defendant
was prosecuted, so far as it affects the offense charged, reads
as follows: "Every person who shall willfully, unlawfully
and maliciously break, destroy or injure the door   .   .   .
of any shop or building being the property of another."   The
defendant was charged in the information with willfully, un-
lawfully and maliciously breaking, destroying and injuring
the front and back doors of said shop, and with breaking the
locks of said doors and breaking open the same while closed,
and forcibly entering the building.   It is urged that, under
the state of facts as disclosed by the evidence, no offense was
committed under this provision of the statute.   We think
that the words "break or destroy," as used in this section of
the crimes act, mean to destroy the completeness of anything.
Now, can it be said that any of the doors to this building
were broken, injured, or destroyed?   A door is defined to be
"a movable barrier of wood, metal, or stone, or other material,
consisting sometimes of one piece, but generally of several
pieces together, and commonly placed on hinges, for closing
a passage into a building, room, or other inclosure."   (2 Cent.
Dict., p. 733.)   The evidence clearly established the fact that
the doors were not damaged in the least.   Two small screws
were pulled out of the casing which inclosed the back door,
and these were replaced the same day.   This was the extent
of the injury.   Under this state of facts, we do not see how
it can be said that an offense was committed under this sec-
tion of the statute.   The doors were not damaged; and the
slight injury in forcing the screws out of the casing of the
door frame could hardly be said to be an injury to the door.
We do not think the statute was intended to cover such a

case as this. Honest disputes as to who is rightfully entitled to the possession of property should not be settled by the aid of the criminal law.

We are of the opinion that the verdict and judgment of the court are unsupported by the evidence. It is recommended that the judgment of conviction be set aside, and that a new trial be granted.

By the Court: It is so ordered.

All the Justices concurring.